IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CLAY CALDWELL, | ) |
|                Plaintiff | ) |
| vs. | ) Civil Action No. 08-728 |
| | ) Chief Magistrate Judge Amy Reynolds Hay |
| ALAN B. FOGEL, Health Care Service Director; CINDY S. WATSON, Chief Deputy Grievance Officer; JEFF MARTIN, Deputy Supert. F.M.; DOCTOR PARK; Physician; DOCTOR JIN, Medical Director M.L. LUKAS, CRNP; IRMA VIHLIDAL, RNS; JOHN MCANANY, RNS; M.L. HOWARD-DIGGS, PA, | ) |
|                Defendants | ) Re: Dkt. Nos. 38 & 41 |

## MEMORANDUM OPINION

HAY, Chief Magistrate Judge

Clay Caldwell ("Plaintiff"), a frequent pro se litigator who is well known to this Court, has filed yet another prisoner civil rights complaint. Plaintiff is a prisoner, serving a life sentence for murder, and was recently transferred to SCI-Greensburg. However, the current complaint concerns the time he was housed in SCI-Greene.

In his current suit, Plaintiff names nine defendants, all of whom worked at SCI-Greene. Plaintiff makes two main complaints: (1) that Defendants have exhibited deliberate indifference to his serious medical needs, i.e., peeling skin on his feet (due to, he surmises, the fact that he worked in the prison kitchen and sometimes the cleaning solution, which he used to wash the food carts, got into his shoes) and hip and knee pain; and (2) that Defendants are taking money out of his account to pay for medications that he should not be charged for under DOC policy.

(Doc. 18 at ¶¶ 9, 13). These actions are said to have violated Plaintiff's constitutional rights. He specifies the time frame for the alleged constitutional violations as being from May 24, 2007 to the present, i.e, to the time he signed his pro se complaint, which was May 28, 2008.

Factual Background

On May 24, 2007, Dr. Park, a defendant herein, examined Plaintiff's feet and ordered some medicated cream for them, namely Tinactin and Clotrimazole. (Doc. 18 at ¶ 1). On November 19, 2007, some six months later, Certified Registered Nurse Practitioner Lukas, a defendant herein, assessed Plaintiff's feet through the cell door and ordered A & D ointment, which Plaintiff complains was not the treatment that Dr. Park had ordered. (Id.). However, the exhibits Plaintiff attaches to his complaint indicate that Dr. Park had only ordered the Tinactin and Clotrimazole for one month. (Doc. 18-2 at 18). Plaintiff complains that his right foot started to bleed in between the toes and pus formed as well after the second time he used the A&D ointment, "not knowing that it was not for Athlete's Foot but for dry skin." (Id. at ¶ 2). Plaintiff complains that no one "told Nurse M.L. Lukas to change Doctor Park's medicine for my feet, and she never read my chart, when she just ordered A& D ointment." (Id.) Plaintiff complains that Defendants Lukas ordered "the wrong medication and . . . [provided] the wrong diagnosis of my problem from her not reading my medical chart." (Id. at ¶ 3).

On December 12, 2007, Physician's Assistant M.L. Howard-Diggs, who is a defendant herein, assessed Plaintiff's feet and ordered Clotrimazole cream for both feet, which Plaintiff notes is only "half the medicine Dr. Park ordered[,]" i.e., Plaintiff did not also obtain an order for Tinactin from Defendant Howard-Diggs. (Id.).

Plaintiff also complains that he was being wrongly charged for these medications and that

Defendant Nurse Supervisor Irma Vihlidal even indicated in a grievance response that Plaintiff "would not be charged for the medication from P.A. Howard-Diggs." (Id.). Plaintiff further indicated that Defendant Nurse Vihlidal made this statement "in grievance # 209696, which is still in appeal stage in Camp Hill, Director of Health Care Services[.]" (Id.).

The only mention of Defendant Jeff Martin is that Plaintiff is awaiting a response from Jeff Martin, Deputy Superintendent, Facility Manager at SCI-Greene, for a reply as to Grievance Number 225577, dated April 16, 2008, wherein he complains that his money is being taken out of his account to pay for medications that according to DOC policy, he should not be charged for. (Id.; see also id. at ¶ 9) (citing Exhibit A 7 to 10); id., at 25 ("your [sic] taking money from my account for on going medical care which is in violation with DC-820 pages 2 and 3 (VI.A.2.G + P[)]").

In addition to his foot condition, Plaintiff apparently complained of hip and knee pain and requests for bottom bunk status as well as bottom tier status, apparently meaning thereby that Plaintiff would be celled on the first floor tier and not have to walk up steps to the second tier in the cell-housing area. On March 21, 2008, Defendant Howard Diggs apparently informed Plaintiff that he has bottom bunk and bottom tier status and that she was ordering new medicine for pain in Plaintiff's lower back and hip. (Id. at ¶ 5).

On March 24, 2008, Plaintiff received a reply to his inquiries and was told that he had a bottom bunk order but no bottom tier order. (Id. at ¶ 6). Plaintiff complains that on March 28, 2008, he was seen by Defendant Lukas who told him that he did not have bottom tier status nor was he permitted to have a plastic chair in his cell and that if Plaintiff wanted such, she would have to talk with Dr. Jin; Plaintiff then advised her that Dr. Jin was the one who first approved

Plaintiff for bottom tier status.  (Id. at ¶ 7).

Next, Plaintiff complains that on April 8, 2008, his feet were examined by Defendant Lukas for the first time in person and not through the cell door and that Defendant Lukas gave Plaintiff an opportunity to explain how the problems with Plaintiff's feet began with the cleaning solution from the kitchen getting into Plaintiff's shoes.  (Id. at ¶ 8).

Next, Plaintiff complains that on May 1, 2008, Defendant Lukas came to Plaintiff's cell and asked him to lift his foot up to the cell window and Plaintiff again explained what he thought was the cause of his foot problems, i.e., exposure to chemicals in the water in the kitchen that had gotten into his shoes.  According to Plaintiff, Defendant Lukas had changed medications for his feet one month earlier from Clotrimazole to Betamethasone DP.  (Doc. 18 at ¶ 10).  Plaintiff alleges that Defendant Lukas stated to him that she was not going to give him, i.e., reorder, the medication even though he reportedly told her the new medication was working.  (Id.).  Apparently exasperated, Plaintiff requested to see a dermatologist on May 4, 2008.  (Id.).

On May 5, 2008, Plaintiff saw Defendant Lukas on sick call and he told her that he wanted to see a dermatologist for his foot problem and she said no.  (Id. at ¶ 11).  Plaintiff complains that she is denying him the right to see a specialist after a year of "the wrong medicine, wrong diagnosis by her and other medical staff here at SCI-Greene."  (Id.).

Plaintiff next alleges that he exhausted all administrative remedies in the first grievance, i.e., Number 209696, but that the Bureau of Health Care Services Director Alan B. Fogel and Chief Deputy Grievance Officer Cindy S. Watson, still refuse to answer the final part where it is clear that Plaintiff suffered from the "wrong medication and wrong diagnosis and [that] no money should have been taken" out of Plaintiff's account for these medical services.  (Id. at ¶

4

12).  This is the only specific mention of Defendants Watson and Fogel in the complaint.

> Finally, Plaintiff offers the following summary of his claims:
>
> Medical Staff know that this was not Athlete's Foot but kept giving me Athlete's Foot medication when I explained to them it started from chemicals in the water at work that got into my boots, but medical [staff] did not listen to me and my feet are still peeling, cracking, sometimes bleeding; this is a total disregard for my health and safety from Doctors, Nurses and PA's along with other prison officials[;] a deliberate indifference to my serious medical needs.  To when I ask for a skin specialist I was told "no" I would not get to see a dermatologist, why not[,] they can't seem to get it right even when I tell them it was (chemicals) [sic], this is a wanton infliction of pain by medical staff also.
> The Medical Staff that allowed and/or took part in this inadequate health care and malpractice along with the wanton and blatan[t] infliction of pain, the deliberate indifference to my serious medical needs, is a violation to my constitutional rights, to have my serious medical needs taken care of even when the staff can't and won't do it, but instead just take money for care I'm not getting. They all know of the wrong doing and did nothing to stop it and get the right medical doctor to handle this problem.

(Doc. 18 at p. 13).

Plaintiff claims that the foregoing states a violation of his Fifth, Eighth and Fourteenth Amendment rights, as well as a "tort" and "inadequate medical care, medical malpractice, equal protection of the law, depriving any person of life or liberty[.]" (Doc. 18 at p. 4, ¶ III).  The Defendants have moved to dismiss the complaint.  (Doc. 38 & 41)

All parties have consented to have the Magistrate Judge exercise plenary jurisdiction over this case and enter final judgment.  (Doc. 19, 46 & 47).

Standard of Review

As the United States Supreme Court recently held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544  (2007), a complaint may properly be dismissed pursuant to Fed. R. Civ. P. 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46

5

(1957)).[1]  Under this standard, the court must, as a general rule, accept as true all factual allegations of the complaint and all reasonable inferences must be viewed in the light most favorable to plaintiff.  Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985).  Nevertheless, under the 12(b)(6) standard, a "court need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit."  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001), amended by, 275 F.3d 1187 (9th Cir. 2001).  Nor must the Court accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint.  See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)).  Nor must the court accept legal conclusions set forth as factual allegations.  Twombly, 550 U.S. at 554 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

In addition to the complaint, courts may consider matters of public record and other matters of which a court may take judicial notice, court orders, and exhibits attached to the complaint when adjudicating a motion to dismiss under Rule 12(b)(6).  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994).  In addition, the Court of Appeals in Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir. 2004), held that a "defendant may submit an indisputably authentic [document] to the court to be considered on a motion to dismiss[.]"

The question to be resolved is: whether, taking the factual allegations of the complaint, which are not contradicted by the indisputably authentic exhibits and matters of which judicial notice may be had, and taking all reasonable inferences to be drawn from those uncontradicted

---

[1] In light of Twombly's overruling of the Conley v. Gibson standard that provided motions to dismiss should only be granted if "no relief could be granted under any set of facts," we reject Plaintiff's invocation of that Conley standard.  Dkt. [45] at 10.

factual allegations of the complaint, are the "factual allegations . . . enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact[.]"  Twombly, 550 U.S. at 555-556.  Or put another way,  a complaint may be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

Furthermore, because Plaintiff was a prisoner at the time of the filing of this civil action,[2] and because he named governmental entities or employees thereof as defendants, the screening provisions of the Prisoner Litigation Reform Act ("PLRA") found at 28 U.S.C. § 1915A apply.  In addition, because he is a prisoner granted IFP status, the screening provisions of 28 U.S.C. § 1915(e) apply.  Lastly, because Plaintiff is a prisoner and his complaint concerns "prison conditions," the screening provisions of 42 U.S.C. § 1997e(c) apply.  Pursuant to these screening provisions, a court is obliged to sua sponte dismiss complaints that are frivolous, malicious or that fail to state a claim upon which relief can be granted.  The court's obligation to dismiss a complaint under the PLRA screening provisions is not excused even after defendants have filed a motion to dismiss.  See, e.g., Lopez v. Smith, 203 F.3d 1122, 1126 n.6 (9th Cir. 2000).  Hence, if there is a ground for dismissal which was not relied upon by a defendant in a motion to dismiss, the court may nonetheless sua sponte rest its dismissal upon such ground pursuant to the screening provisions of the PLRA.  See Lopez; Dare v. U.S., CIV.A.06-115E, 2007 WL

---

[2]  See, e.g., In re Smith, 114 F.3d 1247, 1251 (D.C. Cir. 1997)("If a litigant is a prisoner on the day he files a civil action, the PLRA applies."); Colby v. Sarpy County, No. 4:01CV3130, 2006 WL 519396, at *1 (D. Neb. March 1, 2006)("The status of the plaintiff at the time the lawsuit is initiated, i.e., whether the plaintiff is incarcerated when the complaint is filed, determines whether the PLRA applies to a case.").

1811198, at *4 (W.D.Pa. June 21, 2007), aff'd, 264 Fed.Appx. 183 (3d Cir. 2008).

Because the court can take judicial notice of facts in adjudicating a motion to dismiss under 12(b)(6), and the standards under 12(b)(6) and under the PLRA screening provisions are the same regarding complaints that fail to state a claim, the court may likewise take judicial notice of facts in its sua sponte screening of complaints under the PLRA. See Lloyd v. U.S., No. 99 C 3347, 1999 WL 759375, at *1 (N.D. Ill. Sept. 3, 1999) ("As the court may take judicial notice of public records without converting a motion to dismiss to a motion for summary judgment, Henson v. CSC Credit Services, 29 F.3d 280, 284 (7th Cir. 1994), the court will take judicial notice of court records in conducting its initial review under §1915A."). Lastly, because Plaintiff is pro se, courts accord an even more liberal reading of the complaint, employing less stringent standards when considering pro se pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519 (1972).

Discussion

### Eighth Amendment Claims

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."[3] The Supreme Court has

---

[3] Technically, the Eighth Amendment applies to the states through the Fourteenth Amendment. See Estelle v. Gamble, 429 U.S. 97, 101-02 (1976) (citing Robinson v. California, 370 U.S. 660 (1962)). The standards of the Eighth Amendment barring the federal government from inflicting cruel and unusual punishments are the standards applicable to the States through incorporation by the Fourteenth Amendment's due process clause. See Sistrunk v. Lyons, 646 F.2d 64, 66-67 (3d Cir. 1981)(citing Robinson v. California). The standards under the Eighth Amendment and the standards under the Fourteenth Amendment are fundamentally identical. Furman v. Georgia, 408 U.S. 238, 422 n.4 (1972)(Blackmun, J., dissenting) ("the tests for applying these two provisions are fundamentally identical."). Given this, the Court will not separately analyze the Eighth and Fourteenth Amendments. Rather, the Court will analyze Plaintiff's claims utilizing the standards of the Eighth Amendment and cases construing those standards.

explained that analysis of a violation of the Eighth Amendment involves a two pronged inquiry: (1) an objective inquiry into the qualitative nature of the harm suffered by the victim of the alleged punishment and (2) a "subjective inquiry" into the mind of the person inflicting the harm. See Wilson v. Seiter, 501 U.S. 294 (1991).  Accord  Sims v. Artuz, 230 F.3d 14, 21 (2d Cir. 2000)("A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components–one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect.").

As to the subjective component, in cases involving the denial of medical care, the Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain ... proscribed by the Eighth Amendment." Estelle, 429 U.S. at 104 (internal quotations omitted).  The Court has held that "deliberate indifference" occurs when a prison "official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).  As a corollary of the deliberate indifference standard, mere negligence by staff at the prison, medical personnel and physicians in treating prisoners is not sufficient to state an Eighth Amendment violation. Estelle, 429 U.S. at 105-06.  The Supreme Court has held that

> in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious

medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

Id.

The Medical Defendants point out that the complaint is inadequate because it does not sufficiently allege the subjective prong of the Eighth Amendment. The Court agrees. The complaint at most alleges negligence by the Medical Defendants, all of whom attempted to treat Plaintiff's complaints with medications, albeit with medications that he claims for the most part were for the treatment of athlete's foot, which Plaintiff implies he did not suffer from. Nor is the decision to deny him a consultation with a dermatologist sufficient to state a claim of deliberate indifference. See Estelle, 429 U.S. at 107 ("[T]he question whether an X-ray--or additional diagnostic techniques or forms of treatment--is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice....").

Plaintiff's only arguments in response to the Medical Defendants' motion to dismiss focus on claims that Dr. Jin, after having grown exasperated with Plaintiff on July 16, 2008, told Plaintiff to "take it to China," meaning to get out of his office. (Doc. 48 at 1). Plaintiff further claims that thereafter, Dr. Jin halted all pain medications for Plaintiff's back. (Id. See also id., at 16 to 18). There are several difficulties with this argument.

First, any allegations of wrongdoing occurring on July 16, 2008, occurred after the initiation of this suit and hence, because Plaintiff is complaining about actions occurring after the initiation of this suit, the allegations are not, and indeed could not have been, contained in the operative complaint, which was signed on May 28, 2008 and is deemed to have been filed as of that date pursuant to the so-called prisoner mail box rule. Hence, any allegations occurring after

May 28, 2008 are not properly a part of this suit. Nor may Plaintiff constructively amend his complaint as of right via allegations made in his brief in opposition to the Defendants' motions to dismiss. Grayson v. Mayview State Hospital, 293 F.3d 103, 109 n.9 (3d Cir. 2002)("For the sake of clarity, a prisoner plaintiff (or any other plaintiff) should not be able effectively to amend a complaint through any document short of an amended pleading."); Commonwealth of Pa. ex. rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). Hence, to the extent that he sought to amend his complaint as of right by making this allegation in his brief in opposition, he may not.

Second, he has no absolute right to add such a claim in this suit. Rather, in order to make this new claim against Dr. Jin part of this current suit, Plaintiff would have to seek leave to file a supplemental complaint.

> Rule 15(d) of the Federal Rules of Civil Procedure provides as follows:
>
> Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. Permission may be granted even though the original pleading is defective in its statement of a claim for relief or defense. If the court deems it advisable that the adverse party plead to the supplemental pleading, it shall so order, specifying the time therefor.

A supplemental pleading adds to the original some matter occurring after the beginning of the action or after a responsive pleading has been filed. Klee v. Pittsburgh & W. Va. Railway Co., 22 F.R.D. 252, 254 (W.D. Pa. 1958). The language of Rule 15(d) makes strikingly clear that a supplemental complaint may not be filed without leave of court. See, e.g., Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 961 F.2d 1148, 1156 (5th Cir. 1992)("Dillard filed his

supplemental complaint (which was stricken for failure to ask leave of court to file it)"); ECL Industries, Inc. v. Ticor and Southern Pacific Co., NO. 85 CIV. 9592 , 1986 WL 9222, at *2 (S.D.N.Y. Aug. 18, 1986)("Ticor filed a supplemental complaint (without seeking leave of court, as required by Rule 15(d), F.R.Civ.P.)"); CONSTRUCTION AND APPLICATION OF RULE 15(D) OF FEDERAL RULES OF CIVIL PROCEDURE PROVIDING FOR ALLOWANCE OF SUPPLEMENTAL PLEADINGS SETTING FORTH TRANSACTIONS, OCCURRENCES, OR EVENTS SUBSEQUENT TO ORIGINAL PLEADINGS, 28 A.L.R. Fed. 129, § 4(a) ("It is to be observed that leave of court is always necessary to serve a supplemental pleading under Rule 15(d) of the Federal Rules of Civil Procedure, whereas a party may amend his pleadings under Rule 15(a) as a matter of right during a specified period.").

Plaintiff has not made such a request for leave to file a supplemental complaint and in light of the fact that he can yet file another suit to raise such a claim, the Court would decline, in the exercise of its broad discretion, to grant any such request for leave to file a supplemental complaint. Indeed, much of Plaintiff's brief in opposition is dedicated to events occurring after the filing of the complaint. Hence, none of those arguments are persuasive as to why the operative complaint should not be dismissed.

Plaintiff also argues that his complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. (Doc. 48 at 7) (citing Conley v. Gibson, 355 U.S. (1957). However, Twombly overruled such a standard from Conley and hence, that standard is no longer applicable.

Accordingly, because the complaint at most alleges negligence against the Medical Defendants and such is inadequate as a matter of law to state a claim under the Eighth

Amendment, Plaintiff's Eighth Amendment claims against the Medical Defendants must be dismissed for failure to state a claim upon which relief can be granted.

Similarly, Plaintiff's Eighth Amendment claims against the DOC Defendants must be dismissed for failure to state a claim upon which relief can be granted.

The general rule is that where a prisoner is being treated by medical personnel, non-physician prison officials cannot be deliberately indifferent for failing to intervene in the medical treatment. See, e.g., Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993) ("The only allegation against either of these two [prison official] defendants was that they failed to respond to letters Durmer sent to them explaining his predicament.  Neither of these defendants, however, is a physician, and neither can be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor.")(footnoted omitted); Thomas v. Zinkel, 155 F.Supp.2d 408, 413 (E.D. Pa. 2001)("Prison authorities who are not physicians cannot be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor.  Similarly, health care administrators cannot be found deliberately indifferent when an inmate is receiving care from a doctor.")(internal citations and quotations omitted).  This rule makes sense because a non-physician layperson cannot be deliberately indifferent to a prisoner's medical needs when he knows that the prisoner is being seen by and treated by physicians and/or receiving treatment ordered by a physician, notwithstanding the prisoner's complaints about the physician's treatments and/or alleged mis-diagnosis because a non-physician layperson has no expertise whereby to judge the adequacy *vel non* of a physician's treatment.

The Court of Appeals did explain that the above general <u>Durmer</u> rule is not an absolute rule.  In <u>Spruill</u>, the Court held that

> absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official like Gooler will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference.

<u>Spruil v. Gillis</u>, 372 F.3d 218, 236 (3d Cir. 2004).

It is true that Plaintiff filed grievances or staff requests, which may have provided knowledge to the DOC defendants that Plaintiff was dissatisfied with the medical care, but more is needed than this, otherwise, every time a prisoner complains about his treatment, such would be sufficient to render the non medical personnel liable.  <u>See</u>, e.g., <u>Ashcroft v. Iqbal</u>, __ U.S. __, __, 129 S.Ct. 1937, 1949 (2009)("Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct. In the context of determining whether there is a violation of clearly established right to overcome qualified immunity, purpose rather than knowledge is required to impose Bivens liability on the subordinate for unconstitutional discrimination; the same holds true for an official charged with violations arising from his or her superintendent responsibilities."); <u>Bayer v. Monroe County Children and Youth Services</u>, __ F.3d __, 2009 WL 2477627, at * 2 n.5 (3d Cir. Aug. 14, 2009) (With respect to Bahl, the District Court recognized that he cannot be liable for this violation under § 1983 on a respondeat superior theory, and that plaintiffs 'instead must show that [he] played a personal role in violating their rights.' <u>See</u> <u>Andrews v. City of Phila.</u>, 895 F.2d 1469, 1478 (3d Cir.1990). The court concluded that plaintiffs had created a triable issue 'as to whether Defendant Bahl had personal knowledge regarding the Fourteenth Amendment procedural due process violation.' In light of the Supreme Court's recent decision in <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 173 L.Ed.2d

14

868 (May 18, 2009), it is uncertain whether proof of such personal knowledge, with nothing more, would provide a sufficient basis for holding Bahl liable with respect to plaintiffs' Fourteenth Amendment claims under § 1983.") (citing Iqbal, 129 S.Ct. at 1949)); Brickell v. Clinton County Prison Bd., No. 4:09-CV-00241, 2009 WL 2957788, at *4 (M.D.Pa. Sept. 10, 2009) ("According to traditional Third Circuit precedent, supervisory personnel are only liable under § 1983 if they participated in or had knowledge of violations, if they directed others to commit violations, or if they had knowledge of and acquiesced in subordinates' violations. Baker v. Monroe Twp., 50 F.3d 1186, 1191 (3d Cir.1995). However, with its decision in Ashcroft v. Iqbal, the Supreme Court may have cast doubt on the viability of this standard for holding government officials liable based on a theory of supervisor liability under § 1983. . . . Various courts of appeals, including the Third Circuit, have recognized the potential effect that Iqbal might have in altering the standard for supervisor liability in a Bivens or a § 1983 suit.").

Even if however, mere knowledge of constitutional violations and acquiescence therein were sufficient, in light of the allegations of treatment that Plaintiff admittedly did receive, the complaint lacks sufficient factual heft within the contemplation of Twombly[4] to support a finding of the scienter requirement of an Eighth Amendment deliberate indifference claim as to the DOC

---

[4] Twombly, 550 U.S. at 557:

> The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the "plain statement" possess enough heft to "sho[w] that the pleader is entitled to relief." A statement of parallel conduct, even conduct consciously undertaken, needs some setting suggesting the agreement necessary to make out a § 1 claim; without that further circumstance pointing toward a meeting of the minds, an account of a defendant's commercial efforts stays in neutral territory. An allegation of parallel conduct is thus much like a naked assertion of conspiracy in a § 1 complaint: it gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of "entitle[ment] to relief."

defendants so as to withstand their motion to dismiss. In other words, in light of the treatment recounted in the complaint, Plaintiff has pleaded himself out of court because in light of such treatment, there was no reason on the part of the DOC Defendants to believe or have actual knowledge that Plaintiff was being mistreated or not treated at all within the contemplation of Spruill. Hence, the Eighth Amendment claims against the DOC defendants should be dismissed for failure to state a claim upon which relief can be granted.

Accordingly, all of Plaintiff's Eighth Amendment claims should be dismissed for failure to state a claim upon which relief can be granted.

### Fourteenth Amendment Claims

#### (a) Procedural Due Process

A liberal reading of the complaint reveals that Plaintiff appears to be making a procedural due process claim. Namely, Plaintiff appears to assert that the Defendants are taking monies out of his account to pay for medications that he should not be charged for under the DOC policy. See, e.g., Doc. 18 at 11, ¶ 9, (citing Exhibits A at 7 to 10, i.e., Doc.18 at 22 to 25); id., at 25 ("once again your [sic] taking money from my account for ongoing medical care which is in violation with DC-820"). Apparently, his claim is that he is being deprived of his property without procedural due process. Because Plaintiff is claiming that the monies are being deducted from his account not pursuant to a policy but in violation of a policy, his procedural due process claim must fail as a matter of law.

Under Hudson v. Palmer, the Supreme Court held that a deprivation of property accomplished in violation of state policy, does not violate the plaintiff's procedural due process rights so long as there is a meaningful post-deprivation remedy. Hudson v. Palmer, 468 U.S.

517, 533 (1984). The federal Courts of Pennsylvania have recognized that both the Department of Corrections' internal grievance procedure and the availability of a state tort suit in state court provide adequate post deprivation remedies so as to satisfy due process requirements under Hudson v. Palmer. See, e.g., Edmonds v. Sobina, 296 Fed.Appx. 214, 217 n.5 (3d Cir. 2008) ("To the extent that he raised a Fourteenth Amendment post-deprivation remedy claim, we agree with the Magistrate Judge's reasoning and conclusion that the DOC's post-deprivation remedy was adequate in Edmonds's case. Edmonds filed a grievance and was given an opportunity to identify a legitimate purpose for the UCC-related materials during the course of the prison grievance process, which he failed to do."); Austin v. Lehman, 893 F. Supp. 448, 454 (E.D. Pa. 1995) (both inmate grievance procedure and state tort law action constituted adequate post-deprivation remedies); Rogers v. Mrs. Brown, No. Civ. A. 95-7867, 1996 WL 608473, *2 (E.D. Pa. Oct. 24, 1996) (tort suit in state court provides adequate post deprivation remedy for deprivation of legal papers); Payton v. Horn, 49 F. Supp.2d 791, 795 (E.D. Pa. 1999)(same), abrogated on other grounds, Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002). The availability to Plaintiff of either post deprivation remedy of the DOC grievance procedures and/or a state tort action for conversion of property, renders him unable to state a procedural due process claim. Hence, Plaintiff, cannot as a matter of law, make a claim under the Fourteenth Amendment for a deprivation of property without procedural due process. Payton v. Horn, 49 F. Supp.2d at 795 ("Pennsylvania tort law offers a remedy for prison official's unlawful deprivation of an inmate's property. Therefore, Payton has failed to state a viable claim that his constitutional rights have been violated and cannot maintain a section 1983 action on this claim.")(citations omitted); Reid v. Seville, No. CIV. A. 96-2577, 1996 WL 421901, *3 (E.D.Pa. July 19, 1996)(same).

Accordingly, the Fourteenth Amendment procedural due process claim must be dismissed for failure to state a claim upon which relief can be granted. See, e.g., Caldwell v. Folino, No. 2:08-cv-00122, 2009 WL 1929905, at *6 (W.D.Pa. July 1, 2009).

      (b) Equal Protection Claims

We turn next to Plaintiff's Equal Protection claim. The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. In order to state an equal protection claim, plaintiff must show that: (1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person. See Zahra v. Town of Southold, 48 F.3d 674, 683 (2d Cir. 1995). Instantly, Plaintiff has made no allegations that he was treated any differently from those who were similarly situated to himself. See Hedrich v. Board of Regents of University of Wisconsin System, 274 F.3d 1174, 1183 (7th Cir. 2001) ("In order to make out an equal protection claim, however, Hedrich had to present evidence that the defendants treated her differently from others who were similarly situated."). Because Plaintiff has failed to allege any facts showing disparate treatment against him in comparison with those similarly situated, any equal protection claim must be dismissed. Bell Atlantic Corp. v. Twombly, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]").

      Fifth Amendment Claims

Plaintiff has sued all state actors. The Fifth Amendment, however, protects against federal governmental action. See, e.g., Fallbrook Irrigation Dist. v. Bradley, 164 U.S. 112, 158 (1896)("The fifth amendment, which provides, among other things, that such property shall not be taken for public use without just compensation, applies only to the federal government, as has many times been decided."); Riley v. Camp, 130 F.3d 958, 972 n.19 (11th Cir. 1997)("The Fifth Amendment obviously does not apply here--the acts complained of were committed by state rather than federal officials."). There are no federal actors involved in the instant suit. Accordingly, Plaintiff's Fifth Amendment Claims should be dismissed for failing to state a claim upon which relief can be granted.

### State Law Claims

Plaintiff attempts to make state law claims of torts, including, apparently, medical malpractice. The Defendants have moved to dismiss these medical malpractice claims. However because the Court is dismissing all of the federal law claims, it declines to exercise supplemental jurisdiction over the state law claims. See, e.g., Boneburger v. Plymouth Township, 132 F.3d 20, 23 n.1 (3d Cir. 1997)("where federal claims are dismissed before trial, the district court 'must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.'") (quoting Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995)). See also 28 U.S.C. § 1367(c)(3) which permits a district court to "decline to exercise supplemental jurisdiction over a [state law] claim ... if [it] has dismissed all claims over which it has original jurisdiction...." Here, the appropriate considerations do not provide an affirmative justification for retaining supplemental jurisdiction and deciding matters of state law. In addition, because the

Plaintiff is pro se, we will explain to him the significance of this Court's declining to exercise supplemental jurisdiction over the state law claims.

Because we have declined to exercise supplemental jurisdiction over state law claims, Plaintiff has a federal statutory right (created by 28 U.S.C. § 1367 (d))[5] within thirty days of this order dismissing his federal claims and declining to exercise supplemental jurisdiction, to file in the Greene County Court of Common Pleas a complaint bringing the state law tort claims that this Court declined to exercise supplemental jurisdiction over.[6]

An appropriate Order follows.

/s/ *Amy Reynolds Hay*
Chief United States Magistrate Judge

Dated: 21 September, 2009

---

[5] Section 1367(d) provides that

> The period of limitations for any claim asserted under subsection (a) [e.g., state law claims brought pursuant to supplemental jurisdiction in federal court] , and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

[6] We note in passing that the ability to file in state court his state law claims accomplishes, at least in part, that which Plaintiff requested in Dkt. [53].